**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-1168-WJM

MARGARET D. DEVERAEAUX,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security

    Defendant

---

**ORDER REVERSING ADMINISTRATIVE LAW JUDGE'S DECISION AND
REMANDING CASE TO THE COMMISSIONER**

---

    This appeal is before the Court under 42 U.S.C. § 405(g).  Plaintiff Margaret D. Deveraeaux ("Plaintiff"), challenges a final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits.  The denial was affirmed by an Administrative Law Judge ("ALJ") who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act").  Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, which was denied.  This appeal followed.

    For the reasons set forth below, the ALJ's denial of benefits is reversed and the case is remanded to the Commissioner for rehearing.

## I. BACKGROUND

    Plaintiff filed a claim for Disability Insurance Benefits on January 14, 2009. (Admin. Record ("R.") at 166).  The hearing before ALJ resulted in an unfavorable

decision for Plaintiff on July 13, 2010.  (R. at 30-44).  Plaintiff further requested the Appeals Council to review the ALJ decision, which was denied.  (R. 9.)

**A.      Plaintiff's Background and Summary of Medical Opinions**

Plaintiff has limited education and minimal (if any) real work experience; she was in special education for most of her schooling life.  (R.15 and 39.)  She suffers from depression.  (R. AR 21, 552). The ALJ found Plaintiff's mental impairments to be severe.  (R. 36.)

Plaintiff has received mental health treatment from the Stout Street Clinic—a medical clinic in Denver for the homeless since 2007.  (R. 295).  Her treating nurse, Patricia Hamilton, R.N., provided a detailed assessment of her conditions and obstacles to working for the purpose of the ALJ hearing.  (R. 842-44.)  Nurse Hamilton, R.N. opined that Plaintiff is "markedly limited" in the ability to (1) understand, remember and carry out complex instructions; (2) make judgments on complex work decisions; (3) interact appropriately with the public and supervisors; and, (4) respond appropriately to usual work situations and to changes in simple, routine work settings.  (R. at 842-43)

In February 2007, Dr. David Benson evaluated Plaintiff on behalf of the Colorado Division of Vocational Rehabilitation.  (R. 41.)  This evaluation was conducted for the purpose of determining whether Plaintiff would benefit from rehabilitation services that would allow Plaintiff to return to work.  Dr. Benson identified several areas in which Plaintiff is limited.  (R. 542.)  Dr. Benson opined that "on many levels, it will be difficult for Ms. Devereaux to succeed in the *work world*, or to form and maintain positive relationships." (*Id.*)  He also opined that Plaintiff "lacks an adequate concern about her own welfare" due to her condition and mental limitations.  (*Id.*)

In February 2007, James McGowan, M.D., also examined Plaintiff. Although his examination appeared to focus on her physical impairments, he did note that she was "clearly depressed." (R. 263.) He thought that Plaintiff's depression was a significant contributing factor to her limitations, opining that because of her current state he doubted she could perform "any useful work." (*Id.*) He did indicate, however, that "she ought to be able to do medium work 8 hours daily" if her depression were treated. (*Id.*)

In May 2007, Gayle Frommelt, Ph.D., reviewed Plaintiff's file and concluded that although Plaintiff had some moderate limitations in mental functioning, she was still capable of work that "does not require more than simple instructions, ordinary routines and simple work decision making." (R. 426.) Dr. Frommelt also noted that Plaintiff might "not be able to work closely with supervisors or co-workers," but could "accept supervision and relate to co-workers if contact is not frequent or prolonged." *Id.* She believed, however, that Plaintiff "should have minimal to no interaction with the general public." *Id.*

In February, 2009, Dr. Kutz performed a one-time consultative evaluation on behalf of the Social Security Administration. (R. 392). Dr. Kutz did not perform any formal testing, save a mental status examination, and was provided medical records by the Disability Determination Service. (R. 392-397). On the basis of this evaluation, Dr. Kutz opined that Ms. Devereaux is mildly to moderately limited with respect to maintaining attention and concentration, maintaining persistence and pace and completing tasks. The ALJ ultimately gave the greatest weight to Dr. Kutz's assessment. (R. 42).

**B.     The ALJ's Decision**

On the July 13, 2010, ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process. The ALJ reviewed all the evidence before him, concluding that Plaintiff was not disabled. (R. 33–44.) His reasoning followed the Agency's five-step, sequential evaluation process. *See generally* 20 C.F.R. § 416.920 (2012) (describing the process).[1] At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since applying for SSI. (R. 36.) At the second step, he determined that Plaintiff had several severe impairments, including "mood disorder, anxiety disorder, and borderline intellectual functioning." *(Id.)* At the third step, the ALJ concluded that Plaintiff's impairments did not meet or equal the criteria of any impairment that the agency has decided is *per se* disabling. *(Id.) See generally* 20 C.F.R. pt. 404, subpart P, app. 1 (2012) (listing such criteria). The ALJ found that Plaintiff could perform a limited range of light work, with limitations. (R. 38.) As to the fourth step, the ALJ found that these limitations prevented Plaintiff from returning to any of her past relevant work. (R. 43.) However, in the fifth and final step, the ALJ determined that Plaintiff was capable of making an adjustment to other jobs, "such as duplicating machine operator, . . . and garment sorter." (R. 44.) The ALJ found that Plaintiff has not been under a disability, and Plaintiff's claim for

---

[1] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, *1084 (10th Cir. 2007).

4

Social Security benefits was, therefore, denied.

**C.     Post ALJ Medical Opinion: Dr. Pelc**

Fifteen days *after* the ALJ delivered his decision on Plaintiff's disability claim, Plaintiff was evaluated by Robert E. Pelc, Ph.D on July 28-29, 2010.  (R.14-23).  Dr. Pelc's report was submitted to the Appeals Council in connection with Plaintiff's appeal of the ALJ's decision before the instant action commenced in the District of Colorado.  (R. 6.)  Dr. Pelc conducted a lengthy interview (1.5 hours), and performed psychological testing (7.5 hours).  (R. 14).  Dr. Pelc also reviewed the entire exhibit file from Plaintiff's Social Security case in forming his opinion.  (R.15).

Dr. Pelc documented that Plaintiff had significant difficulty following oral directions during the testing—specifically, he opined that during the interview, "questions had to be repeated for her" and Plaintiff often appeared confused.  (R.16).  (*Id.*)  He opined that her behavior became evident in her responding to psychological testing, which required approximately twice as long as that which is ordinarily done even with clients who are experiencing significant psychological problems.  (*Id.*)  At times, Dr. Pelc noted that Plaintiff would "blankly stare and be nonresponsive."  (*Id.*)

Because of her confusion and memory issues, Dr. Pelc also administered a standard memory test.  She ranked in the 1st percentile on every measure of the test.  (R. 20).

In concluding his nine-page evaluation, Dr. Pelc opined that Plaintiff has severe ongoing functional limitations as a result of her mental health conditions.  (R.22-23).  He stated that her activities of daily living are "moderately limited."  (R.22-23).  Her social functioning is "moderately to markedly limited."  (*Id.*)  Her cognitive functioning, which

5

includes persistence and pace, is "markedly limited". (*Id.*) Her ability to adapt to change, make judgments at work or deal with changes in routine work settings are markedly impaired. (*Id.*) Her capacity to make judgments even on simple work related information processing would be viewed as "markedly compromised." (*Id.*) Her capacity to deal with usual work settings and to deal with changes in those routine work settings would also be seen as markedly compromised, primarily as a result of her "cognitive deficits." (*Id.*)

## II.  STANDARD OF REVIEW

The Court reviews decisions of the Commissioner to determine (1) whether substantial evidence in the record as a whole supports the factual findings, and (2) whether the correct legal standards were applied**.**  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.  *Id*.  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

A district court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g).  In reviewing the Commissioner's decision, the Court may neither reweigh the evidence, nor substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  Notwithstanding this, if the ALJ failed to "apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.

1993).

As the Tenth Circuit observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* This duty exists even when the claimant is represented by counsel. *Id.* at 480.

### III.  ANALYSIS

On appeal, Plaintiff raises three principal arguments: (1) that the case must be remanded for consideration of Dr. Pelc's report that was submitted to the Appeals Council after the ALJ hearing and before the instant action commenced in the District of Colorado;[2] (2) the ALJ erred in failing to properly evaluate factors pursuant to SSR 06-03p when weighing Nurse Hamiliton, R.N's opinion; and (3) the ALJ erred because the Residual Functional Capacity ("RFC") finding is internally inconsistent.  (ECF No. 15 at 2.)  Within Plaintiff's third argument, Plaintiff also argues that the ALJ erred because questions predicated from inconsistent RFC findings adversely affected questions posed to the vocational expert resulting in tainted evidence which was wrongly relied upon by the ALJ in denying Plaintiff's disability claim. (*Id.*)

### A.     RFC Not Supported by Substantial Evidence Because it Did Not Consider Dr. Pelc's Opinion

Plaintiff challenges the Commissioner's decision for failing to consider Dr. Pelc's opinion regarding Plaintiff's mental limitations. To resolve this issue, the Court must address the question of "what role does late submitted evidence, like Dr Pelc's opinion,

---

[2] *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (stating the three-prong test determining where new evidence should be considered).

have in the judicial review process"?[3] (ECF No. 16 at 16.) Here, *both* parties *agree* that the three-prong test in *Chambers* resolves this issue. (*See*, ECF No. 16 at 16; ECF No. 17 at 2-3.) Where the parties diverge, however, is whether all three prongs are satisfied in favor of Plaintiff.[4] [5]

Under 20 C.F.R. §§ 404.970(b) and 416.1470(b), the Appeals Council must consider evidence submitted with a request for review "if the additional evidence is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision." *See Chambers*, 389 F.3d at 1142.[6]

1. Is the evidence new?

With respect to the first prong, the Commissioner does not seriously challenge whether Dr. Pelc's evidence is considered 'new' under the relevant regulations. Dr. Pelc's report is clear. It provides numerous psychological tests which evaluated Plaintiff's mental limitations; all of which added 'new' evidence to the record. (ECF No.

---

[3] Note, this was the precise question that the Commissioner posed in its brief. (ECF No. 16 at 16.)

[4] Plaintiff contends that there is nothing in the record indicating that the Appeals Council issued a decision considering (or even re-considering) Dr. Pelc's evidence before the instant action was filed with this Court. (ECF No. 9-2 at 2; ECF No. 9-2 at 10; ECF No. 17 at 3.) And the Commissioner does not argue differently. Instead, the Commissioner posits that the issue of Dr. Pelc's evidence can be resolved applying the test laid out in *Chambers*, 389 F.3d at 1142. Plaintiff agrees with this approach, as does the Court.

[5] If the test is satisfied, the Commissioner's brief expressly states that the Court may "consider such evidence—alongside all the other evidence—in determining whether the Commissioner's decision is support by substantial evidence." (ECF No. 16 at 16.)

[6] If the new evidence qualifies for consideration, "[t]he Appeals Council shall evaluate the entire record including the new and material evidence submitted . . . . It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); *see also O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994) (holding that qualifying new evidence becomes part of the record for purposes of judicial review).

9-2 at 15.)

  2. <u>Is the new evidence material?</u>

  With respect to the second prong, the Court concludes that Dr. Pelc's evidence *is* material to the outcome of this case. The reasons are three-fold. First, Dr. Pelc's opinion is based on extensive testing. The opinion addresses his findings in detail. This is clear from a review of Dr. Pelc's report, and the conclusions therein. These are summarized at page five of this Order. Second, Dr. Pelc's assessment supports the opinion of Plaintiff's treating psychiatric nurse (Nurse Hamilton, R.N.), and contradicts opinions of other physicians upon which the ALJ relied.[7] For example, Dr. Pelc's evidence is at odds with Dr. Kutz's opinion regarding Plaintiff's mental limitations, among other things. (R.22-23) Given the detail, and length of time that Dr. Pelc spent evaluating in Plaintiff's limitations, it is difficult to discount his opinion as not being material. Third, and to reinforce the second reason why the evidence is material, Dr. Pelc regularly makes psychological evaluations at the request of the Social Security Administration. He does so both as a consultative examiner, and frequently as an impartial medical expert. For example, Dr. Pelc has personally been involved in at least fourteen previous hearings where various ALJs have called him as a medical expert. (ECF No. 17 at 4.) (listing cases therein.) Although this would not automatically lead the

---

[7] One of the main reasons the ALJ gave for rejecting Nurse Hamilton, R.N's opinion was that she was not a psychiatrist or psychologist, and her opinion was "inconsistent with the opinions of other acceptable medical sources." (ECF No. 9-2 at 43). Adding Dr. Pelc's opinion to the mix may well undercut that rationale. *See Flaherty*, 515 F.3d at 1070 (stating that a district court "meticulously examines the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met.")

ALJ to agree with Dr. Pelc's opinion, he does appear to have a well-established reputation.  This tends to support the notion that his evidence has been material to Social Security matters in the past. And there would seem no reason why his evidence, in this case, would not be equally material upon remand when it is weighed with other evidence that the ALJ has previously reviewed.   Because of this, the Court finds that there is a 'reasonable possibility' that Dr. Pelc's evidence would have changed the outcome in this matter had it been considered by the Commissioner in making its decision.  This satisfies the second prong.  *See Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (stating that "evidence is material to the determination of disability if there is a reasonable possibility that [it] would have changed the outcome.")

        3.      <u>The relevant time period.</u>

With respect to the third prong—whether new evidence relates to the time period on or before the ALJ decision—the Court finds in the affirmative.  Dr Pelc reviewed all the documents in the entire ALJ record.  (ECF No. 17 at 6.)  These documents all pre-dated the ALJ decision of July 13, 2010.  These documents specifically included records dating back to Plaintiff's attendance at Denver Public Schools in 1966; all of which supported Dr. Pelc's opinion that Plaintiff's cognitive functioning, *inter alia*, is "markedly limited" for the purposes of Plaintiff's disability claim.  (R.22-23).

Accordingly, based on the reasoning above, the Court finds that the test laid out in *Chambers* has been satisfied. The opinion evidence in Dr. Pelc's report, therefore, shall be considered by the ALJ upon remand.

4. <u>Harmless Error Doctrine.</u>

Notwithstanding the Court's finding above, the Commissioner further contends that even if the three-prong test *is* satisfied, such error was harmless. Specifically, the Commissioner states:

> But even assuming that Dr. Pelc's opinion does relate to Plaintiff's functioning prior to the ALJ's decision, it does not significantly erode the substantial evidence on which the ALJ's decision was based.

(ECF No. 16 at 17.) The Commissioner's argument is, however, rejected. First, the Court observes that by arguing harmless error, the Commissioner implicitly concedes that Dr. Pelc's report should have been considered before this action was filed in the District of Colorado. Second, the Court finds that the failure to consider Dr. Pelc's report does not fall within the harmless error doctrine because the doctrine is only applicable in exceptional circumstances where one could "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

Here, and as discussed above, Dr. Pelc's reputation seems to be well-established in Social Security matters. Dr. Pelc's report is also detailed and based upon medical reports dating back to 1966 relevant to the Plaintiff's mental limitations. Thus, the Court cannot say, with any confidence, that no reasonable administrative factfinder could have resolved this matter any other way. *Allen v*, 357 F.3d at 1145.

In light of the above, the Commissioner's argument that Dr. Pelc's report could not have affected the outcome of the case is without merit. The Court has no other

11

option but to remand this case to address new, material, and temporally relevant, evidence that was submitted after the ALJ hearing. *Chambers*, 389 F.3d at 1142.

**B.    The ALJ Did not Properly Evaluate and Apply the Relevant Factors to the Opinion Proffered by Nurse Hamilton, R.N.**

Plaintiff contends that the ALJ committed reversible error by improperly rejecting the opinion of Nurse Hamilton, R.N. in denying Plaintiff's claim for disability benefits.

Specifically, Plaintiff contends that the ALJ failed to address the following factors when it weighed Nurse Hamilton R.N.'s opinion for the purpose of determining Plaintiff's mental limitations—including: "(1) How long the source has known and how frequently the source has seen the individual; (2) How consistent the opinion is with other evidence; (3) The degree to which the source presents relevant evidence to support an opinion; (4) How well the source explains the opinion; (5) Whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) Any other factors that tend to support or refute the opinion." *See,* SSR 06-03p, 71 Fed. Reg. 45,593, 45,595 (Aug. 9, 2006). *See also, Wall*, 561 F.3d at, 1052 (10th Cir. 2009) (stating that failure to apply correct legal standards constitutes reversible error).

Tellingly, and relevant to this case, the above factors are set in the following context as expressly stated in SSR 06-03p:

> With the growth of managed health care in recent years and the emphasis on **containing medical costs**, medical sources who are not "acceptable medical sources," such as **nurse practitioners**, physician assistants, and licensed clinical social workers, have **increasingly assumed** a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources"

>under our rules, are **important** and should be evaluated on **key issues such as impairment severity** and **functional effects**, along with the other relevant evidence in the file. (emphasis added.)

Plaintiff contends that the ALJ did not properly apply factor two—*i.e.*, how consistent the opinion is with other evidence. The Commissioner disagrees. The Commissioner contends that the ALJ noted that Nurse Hamilton R.N.'s opinion was "inconsistent with the opinions of other acceptable medical sources whose opinions appear to be better supported by the record as a whole."[8] (R. 42.) But as indicated in the Commissioner's own brief—and also under SSR 06-03p—the relevant factor assesses *not* whether Nurse Hamilton R.N.'s opinion is consistent with the record as a *whole*; rather the factor requires evaluation of whether Nurse Hamilton R.N.'s opinion is "consistent with other evidence." (ECF No. 16 at 19.)

The Court finds that Nurse Hamilton R.N.'s opinion *is* consistent with other evidence in the record. *See* SSR 06-03p. Indeed, it is consistent with the opinions of Dr. Benson and Dr. Pelc. While Dr. Pelc's report was not before the ALJ at the time of the decision, the Court has found that Dr. Pelc's report is new, material and temporally

---

[8] This is the verbiage that is used when an ALJ weighs acceptable medical sources—*i.e.*, "how consistent the medical opinion is with the record as a whole." SSR 06-03p. The language that is used when the ALJ weight not "acceptable medical sources" is "how consistent the opinion is with other evidence." *Id.* There is no clear reason why there is a change in language; but the Court finds that the change can only mean that there is a change in meaning. And in this case, it means that the factor should be applied in such a way where the ALJ must first look to whether there is any other evidence in the record that is consistent with Nurse Hamilton R.N.'s. Here, there is some consistency with Dr. Benson's report. And the Court also notes that Nurse Hamilton R.N.'s opinion is certainly not inconsistent with parts of Dr McGowan's report (stating that Plaintiff is "clearly depressed" at R. 263); and Dr Frommelt's report (Plaintiff "should have minimal to no interaction with the general public" at R. 426.) Unlike Dr. Pelc's evidence, which is also consistent with Nurse Hamilton R.N.'s opinion, Dr McGowan's report and Dr Frommelt's report were before the ALJ at the time of the determination.

relevant, to the Plaintiff's matter. This has been addressed above. And because his opinion is consistent with Nurse Hamilton R.N.'s opinion, it must be duly considered on remand to determine the substantiality of the evidence in accordance with SSR 06-03p.[9]

With respect to Dr. Benson, both he and Nurse Hamilton, R.N. concluded that it would be difficult for Plaintiff to "succeed in the work world" given her mental limitations. These opinions, and consistencies therein, can be found at pages two and three of this Order. In the Court's view, there is nothing in the ALJ's decision that addresses these consistencies—or *how* they may be consistent as required under SSR 06-03p. Instead, the ALJ finds that both opinions were either inconsistent with "all the evidence" (R. 41); and/or inconsistent with "the record as a whole" (R. 38, 41.) Application of this factor, in this manner, is incorrect and constitutes reversible error. *See, Wall*, 561 F.3d at, 1052.

Plaintiff also contends that the ALJ did not meaningfully address the fifth factor—*i.e.*, whether Nurse Hamilton R.N. had a specialty or area of expertise related to the individual's impairment(s). *See* SSR 06-03p. The Court agrees. Given the increasing role assumed by registered nurses in evaluating functions previously handled by physicians, the Court finds that application of this factor takes on increased significance. This view is consistent with what is stated in SSR 06-03p. It follows that failure to properly apply the fifth factor, as here, further supports a finding that a decision-maker has erred in application of same. Relevantly, Nurse Hamilton R.N. is a "psychiatric nurse practitioner." (ECF No. 15 at 21.) She also has a master's degree in

---

[9] Nurse Hamilton, R.N. and Dr Pelc both stated that Plaintiff's cognitive functioning is "markedly limited." This is just one consistency, among others in the reports.

nursing and has been a licensed registered nurse since March 1974. (*Id.*) None of these details are expressly identified in the ALJ's decision. Instead, the ALJ repeatedly refers to Nurse Hamilton R.N. as "Ms. Hamilton", with the reference to her medical background interspersed in limited (dismissive) fashion throughout the decision. The Court finds that reference to the specialization is highly relevant in this case given that Nurse Hamilton R.N. has essentially assumed the role that would typically be handled by a treating physician. And the since the factor has not been properly applied by the ALJ, this further cuts against the Commissioner's position.

In sum, the ALJ did not apply the correct legal standard because (1) the ALJ compared Nurse Hamilton R.N.'s opinion with the evidence as a whole; (2) the ALJ did not properly determine whether (or how) her opinion was consistent with other evidence, such as Dr. Benson's report, and (3) the ALJ did not properly address Nurse Hamilton, R.N.'s area of specialization as required under SSR 06-03p. Because the ALJ has not applied the correct legal standard (at least with respect to the abovementioned factors stated in SSR 06-03p), the Court finds that the ALJ has erred in its determination, warranting reversal and remand of Plaintiff's case. *See Wall*, 561 F.3d at, 1052 (stating that failure to apply correct legal standards constitutes reversible error).[10]

---

[10] To the extent that it is argued by the Commissioner, the Court notes that the doctrine of harmless error does not apply in this case. The doctrine only applies in the most exceptional of cases—not this one. *See Allen*, 357 F.3d at 1145.

**C.	The ALJ's Findings are Internally Inconsistent and Hypothetical Questions Put to the Vocational Expert Did Not Precisely Reflect Plaintiff's Limitations**

Finally, Plaintiff contends that the ALJ's erred because (1) the RFC findings are internally inconsistent and, (2) because the RFC is internally inconsistent the hypothetical questions proposed to the vocational expert did not reasonably reflect Plaintiff's limitations. (ECF No. 15 at 30.) These arguments are addressed as follows.

1.	<u>Internal Inconsistency</u>

Plaintiff argues that the Commissioner's decision must be remanded because the ALJ's RFC findings were internally inconsistent. (ECF No. 15 at 32.) In making this argument, Plaintiff focuses on the ALJ's finding that Plaintiff could "understand, remember and carry out *simple* and routine instructions that require a reasoning level of no more than '2' as described in the Dictionary of Occupational Titles." (R. 38.) Plaintiff contends this finding is internally inconsistent because reasoning level 2 involves more than "simple and routine instructions." (ECF No. 15 at 32.) Plaintiff points out that the limitation to "simple and routine instructions" actually refers to reasoning level 1. And while the ALJ found that Plaintiff is limited to reasoning level 1, it also found that Plaintiff could do jobs requiring reasoning level 2. (R. 38.) This inconsistency, Plaintiff contends, constitutes reversible error that taints the questions posed to the vocational expert. The Court agrees; particularly after closer inspection of the relevant reasoning levels in this case. These include:

> Reasoning Level 1: Apply commonsense understanding to carry out **simple one-or two-step instructions**. Deal with standardized situations with occasional or no variables in or from the situations encountered on the job.

> Reasoning Level 2: Apply commonsense understanding to carry out **detailed** but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations. (Emphasis added).

One of the fundamental differences between the levels is that reasoning level 1 involves the ability to understand "**simple**" instructions; whereas reasoning level 2 involves the ability to understand "**detailed**" instructions.  *See Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) (stating that R2 "requires more than mental capacity to follow simple instructions"); *Monaghan v. Astrue*, 2009 WL 1973513 (D. Colo. 2009) (stating that "simple, repetitive work activity" consistent with R1 not R2); *Scheibeler v. Astrue*, 2009 WL 3077310, at *3, (D. Colo. 2008) (same); *Cooper v. Barnhart*, 2004 WL 2381515, *4 (N.D.Okla. 2004) (same); *Allen v. Barnhart*, 2003 WL 22159050 (N.D. Cal. 2003) (stating that "simple, routine tasks" are not consistent with R2).

The Commissioner does not meaningfully address the inconsistency in the ALJ decision.  Nor does the Commissioner address any of the above cases.  *See Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir.1992) ("A litigant who fails to press a point . . . by showing why it is [un]sound . . . , forfeits the point.")  Presumably, the Commissioner does not challenge the inconsistency, nor the cases cited by Plaintiff, because it is near impossible to reconcile the ALJ's determination on this issue other than arguing that the inconsistency is harmless to the overall outcome of the case. But even that argument, as stated later, is far-fetched.

Therefore, because of the above inconsistency, the Court is left with no choice but to remand this case to the Commissioner for rehearing so that material issues to Plaintiff's disability claim may be reconciled.  *See Baca*, 5 F.3d at 480 (stating that the

ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues.")

### 2. Hypothetical Questions are Not Precise

Because of the above error in the RFC, Plaintiff further argues that ALJ erred on the basis that the two occupations used to deny Ms. Devereaux's claim—garment sorter and photocopy machine operator—both require a reasoning level 2. (ECF No. 15 at 32.) Both these occupations offered by the vocational expert were predicated on questions that derived from the RFC. As stated above, the RFC was predicated on inconsistent findings with respect to Plaintiff's reasoning level.

Because the questions to the vocational expert were based on inconsistent findings, the Court finds that the testimony elicited from the vocational expert cannot be said to relate with precision to Plaintiff's mental limitations—and, therefore, cannot constitute substantial evidence upon which to deny Plaintiff's disability claim. The case-law says as much. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions that do not relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.")[11]

Accordingly, the Court finds that the ALJ's determination is not supported by substantial evidence, which warrants reversal and remand of this case. *Flaherty*, 515 F.3d at 1070 (stating that "a district court meticulously examines the record as a whole,

---

[11] An ALJ must make specific RFC findings based on all of the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996). Here, inconsistent findings by the ALJ are hardly consistent with the relevant evidence in the record.

including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met.")

      3.     <u>Harmless Error</u>

To the extent the Commissioner contends that the above RFC inconsistencies constitute harmless error, the Court rejects that argument. Courts apply harmless error cautiously in the administrative review setting. *Fischer-Ross.*, 431 F.3d at 733. This case is no exception. Here, the ALJ's error is *not* harmless because the jobs identified by the vocational expert are predicated on inconsistent mental limitations that derive from an inconsistent RFC findings in the ALJ decision. Indeed, the ALJ's error(s) are anything but harmless, and tip more toward the significant end of the spectrum given the clear distinctions between reasoning level 1 and reasoning level 2.

**D.**    **Remaining Arguments**

Plaintiff raises additional issues related to the sufficiency of the underlying proceedings. Because the Court finds that the deficienices in the ALJ decision as set forth in detail above require remand, it need not address the other arguments raised by Plaintiff—particularly in circumstances where the Commissioner's harmless error arguments have been rejected. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal).

The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered. It is entirely possible that, given the passage of time and the

positive manner in which it appeared Plaintiff's life was changing as of the hearing before the ALJ, the ALJ could arrive at the same conclusion and find that Plaintiff is not disabled.  The Court does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties, as well as the ALJ, to consider the evidence and the issues anew.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this case is REMANDED to the Commissioner for rehearing.

Dated this 31st day of May, 2013.

BY THE COURT:

_____
William J. Martínez
United States District Judge